**UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF WISCONSIN**

In Re:

| | |
|---|---|
| CIB MARINE BANCSHARES, INC., | Case No. 09-33318-JES |
| Debtor in Possession. | Chapter 11 |

**DEBTOR'S MOTION FOR ENTRY OF ORDER (A) SCHEDULING AN OBJECTION DEADLINE AND COMBINED HEARING ON ITS DISCLOSURE STATEMENT AND PLAN CONFIRMATION, (B) APPROVING FORM AND NOTICE OF CONFIRMATION HEARING, (C) ESTABLISHING PROCEDURES FOR OBJECTIONS TO ITS PLAN AND DISCLOSURE STATEMENT, (D) APPROVING SOLICITATION PROCEDURES, AND (E) GRANTING RELATED RELIEF**

The above-captioned debtor and debtor-in-possession (the "Debtor"), hereby moves the Court, pursuant to this motion (this "Motion"), for the entry of an order, substantially in the form attached hereto as **Exhibit A**: (a) scheduling an objection deadline and scheduling a combined hearing (the "Confirmation Hearing") on the adequacy of the *Disclosure Statement for the Debtor's Prepackaged Plan of Reorganization Pursuant to Chapter 11 of the Bankruptcy Code*, dated July 16, 2009 (as amended from time to time, the "Disclosure Statement") and confirmation of the *Debtor's Prepackaged Plan of Reorganization Pursuant to Chapter 11 of the Bankruptcy Code*, dated July 16, 2009 (as amended from time to time, the "Plan");[1] (b) approving the form and manner of notice of the Confirmation Hearing; (c) establishing

---

[1] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Plan.

Drafted by:
Timothy F. Nixon
Carla O. Andres
GODFREY & KAHN, S.C.
780 North Water Street
Milwaukee, Wisconsin 53202
Telephone: 414-273-3500
Facsimile: 414-273-5198
E-mail: tnixon@gklaw.com
candres@gklaw.com

procedures for objections to the Plan and Disclosure Statement; (d) approving the solicitation procedures (the "Solicitation Procedures") used in connection with the Debtor's solicitation of the Plan prior to the Petition Date (as defined below); and (e) granting related relief. In support of this Motion, the Debtor respectfully states as follows:[2]

## Jurisdiction

1. The court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 (b)(2) and 1334. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2).

2. Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

3. The statutory bases for the relief requested herein are §§ 105, 1125, 1126, and 1128 of title 11 of the United States Code, 11 U.S.C. §§ 101, *et seq.* (the "Bankruptcy Code"), Rules 2002, 3016, 3017, 3018, and 3020 of the Federal Rules of Bankruptcy Procedure ("FRBP") and Rules 3017 and 3017.1 of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the Eastern District of Wisconsin (the "Local Rules").

## Background

4. On the date hereof (the "Petition Date"), the Debtor commenced a voluntary case (the "Chapter 11 Case") under chapter 11 of the Bankruptcy Code with this Court. The Debtor is authorized to continue to operate its business and manage its properties as debtor-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

5. No request for appointment of a chapter 11 trustee or examiner has been made and, as of the date hereof, no official committee has been appointed.

6. The Debtor is a Wisconsin corporation registered as a bank holding company under the Bank Holding Company Act of 1956 and headquartered at N27 W24025 Paul Court,

---

[2] The facts and circumstances supporting this Motion are set forth in the Declaration of John Hickey in Support of First Day Motions (the "First Day Declaration"), filed contemporaneously herewith and incorporated by reference herein.

Pewaukee, Wisconsin. The Debtor is not a bank, but the Debtor's principal subsidiary is CIBM Bank, an FDIC-insured commercial bank chartered under the laws of the State of Illinois, which is wholly owned by Debtor.

7. The Debtor has prepared a Plan of Reorganization and Disclosure Statement pursuant to Chapter 11 of the Bankruptcy Code (the "Plan") and has solicited acceptance of the Plan from that class of claims entitled to vote on the Plan. This Chapter 11 Case is filed as a pre-packaged plan of reorganization.

### Historical Detail

8. In June 2009, Marine Bank (the Debtor's wholly owned banking subsidiary) merged with and into Central Illinois Bank (the Debtor's other wholly owned banking subsidiary), with Central Illinois Bank being the surviving entity and adopting the name "CIBM Bank." CIBM Bank owns and operates two nonbank subsidiaries, CIB Real Estate Holdings, LLC and Marine Investment Corporation. CIBM Bank (under its current and former names) together with the former Marine Bank of Wauwatosa, Wisconsin, Marine Bank FSB of Scottsdale, Arizona, and CIB Bank of Indianapolis, Indiana (all now merged into what is CIBM Bank), and together with Citrus Bank, N.A. and CIB Bank, both of which were formerly owned by the Debtor, are hereinafter collectively referred to as the "Subsidiary Banks."

9. The Debtor has five additional wholly owned nonbanking subsidiaries: (i) First Ozaukee Capital Corp. (which, in turn, was the parent corporation of Marine Bank); (ii) CIB Marine Information Services, Inc., (iii) Mortgage Services, Inc.; (iv) CIB Marine Capital, LLC; and (v) CIB Construction, LLC. As of the Petition Date, all but CIB Information Services, Inc. have ceased operations and are in the process of winding down.

10. The Debtor is also the sole owner of all of the common securities of four statutory or business trusts – CIB Marine Capital Trust I, CIB Statutory Trust III, CIB Statutory Trust IV and CIB Statutory Trust V (the "Statutory Trusts").

11. The Debtor and the Subsidiary Banks experienced a period of rapid growth and expansion between late 1999 through 2002. As part of its capital maintenance, between March 2000 and September 2002, the Debtor raised an aggregate of $60 million in capital through the issuance by the Statutory Trusts of four series of Trust Preferred Securities ("TruPS").

12. The source of funds for the payment by each Statutory Trust of distributions on the TruPS issued by it are principal and interest payments on a series of debentures in identical amount issued by the Debtor to such Statutory Trust (the "Debentures"). Although the Debentures are considered "capital" for bank regulatory purposes, they are classified as long-term indebtedness on the Debtor's balance sheet.

13. Under the terms of the indentures pursuant to which the Debentures were issued (the "Indentures"), the Debtor is entitled to defer interest payments thereon for a maximum five-year period, with all deferred interest coming due in full at the end of such deferral period.

14. During the Debtor's period of rapid growth and expansion from 1999 through 2002 a number of large loans were booked by the Subsidiary Banks, some of the loans subsequently became non-performing.

15. During 2003 and 2004, due to a significant deterioration in the credit quality of the Subsidiary Banks' loan portfolios and other credit-related matters, the Debtor shifted its strategic focus from business development and asset growth to improving the Subsidiary Banks' credit administration function, asset quality and liquidity and capital positions.

16. Examinations of CIB Bank (the Debtor's Illinois bank subsidiary at the time) by the Illinois Department of Financial and Professional Regulation, Division of Banks and Real Estate ("IDBRE") and the FDIC conducted during 2002 and 2003 identified severe deterioration in the credit quality of CIB Bank's loan portfolio, heightened credit concentration risk, and weakness in the credit administration process. As a result, in January 2003, CIB Bank entered into a Memorandum of Understanding ("MOU") with the IDBRE and the FDIC. Pursuant to the MOU, CIB Bank agreed to suspend the declaration or payment of dividends to its parent, the Debtor, without regulatory approval.

17. The Debtor experienced deterioration in the credit quality of its Subsidiary Banks' loan portfolios throughout 2003, including a significant increase in nonperforming assets. Regulatory examinations of CIB Bank and certain of the Subsidiary Banks in the Fall of 2003 revealed serious asset quality and credit administration concerns that caused the regulators to pursue formal enforcement actions against two of the Subsidiary Banks, all of which became effective in May 2004 but which were subsequently lifted.

18. In addition to the foregoing, in 2004, the Debtor entered into a Written Agreement with the Federal Reserve Bank of Chicago (the "Reserve Bank Agreement") which, among other items, requires the Debtor to obtain Reserve Bank approval to pay interest on the Debentures. The Reserve Bank Agreement remains in effect as of the Petition Date.

19. As a result of the Reserve Bank Agreement, in the first quarter of 2004, the Debtor elected to begin deferring interest payments on all four series of Debentures as permitted under the terms of the respective Indentures, and, consequently, distributions on the TruPS were also deferred for such period.

20. The Debtor has sustained significant operating losses in each of the six fiscal years from 2003 through 2008 and the first two quarters of 2009 due in large part to credit losses, as well as to Debtor's continued accrual of deferred interest on the Debentures aggregating in excess of $2 million per fiscal quarter and totaling approximately $43.5 million dollars at June 30, 2009.

21. During 2004 and 2005, the Debtor became a defendant in two lawsuits brought by former shareholders that were ultimately settled in August 2008. The general terms of the settlement involved the payment by the Debtor of approximately $3.4 million, together with an additional amount paid by the Debtor's insurer, inclusive of costs and the Debtor's agreement to certification of a plaintiff class and obtaining class approval.

22. The Debtor deferred interest payments on the Debentures for the maximum five year deferral period permitted under the Indentures such that all accrued and unpaid interest, then aggregating approximately $41.3 million at March 31, 2009, came due and payable in full during the first quarter of 2009.

23. On March 16, 2009, the Debtor submitted a Consent Solicitation to TruPS holders to restructure its existing obligations under the Debentures (the "Consent Solicitation"). The restructuring was ultimately not approved.

24. Debtor lacked sufficient cash with which to pay the accrued and unpaid interest on the Debentures in full and, as a result, defaulted under the terms of the Indentures. As a result of such default, the Statutory Trusts are entitled, at the direction of the holder of the TruPS, to accelerate the indebtedness on the Debentures which, as of June 30, 2009, aggregated approximately $105.3 million, including approximately $43.5 million of accrued unpaid interest and approximately $61.9 million of principal.

25.     The Debtor has sought the protections of the Bankruptcy Court as it negotiates with its creditors to restructure the obligations associated with the TruPS and the related Debentures or, in the alternative should such efforts prove unsuccessful, to evaluate its assets for purposes of ultimate distribution to its creditors.

**Relief Requested**

26.     By this Motion, the Debtor respectfully requests entry of an order, substantially in the form attached hereto as **Exhibit A** (the "Scheduling Order"): (a) scheduling an objection deadline for objections to the Plan and Disclosure Statement and scheduling the Confirmation Hearing; (b) approving the form and manner of notice of the Confirmation Hearing; (c) establishing procedures for objections to the Plan and Disclosure Statement; (d) approving the Solicitation Procedures; and (e) granting related relief.

27.     Below is a table highlighting the dates relevant to the Solicitation Procedures and setting forth the Debtor's proposed dates for the mailing of the Confirmation Hearing Notice, the Confirmation Hearing, and the Objection Deadline (as defined below):

| Proposed Timetable | |
|---|---|
| Record Date for Voting | July 15, 2009 |
| Commencement of Solicitation | July 16, 2009 |
| Voting Deadline | September 15, 2009, 5:00 p.m. |
| Petition Date | September 15, 2009 |
| Confirmation Hearing Notice | September 17, 2009 |
| Objection Deadline | October 14, 2009 |
| Reply Deadline | October 20, 2009 |
| Confirmation Hearing | October 22, 2009 |

**Basis for Relief**

28.     As set forth herein, prior to the Petition Date, the Debtor solicited votes on the Plan from Holders of TruPS Claims classified in Class 3 under the Plan (the "Voting Class"). The Plan was overwhelmingly accepted by the Voting Class.  All holders of claims or interests in non-voting classes need not be solicited because such Holders are unimpaired and conclusively presumed to accept the Plan pursuant to Bankruptcy Code § 1126(f).  Consequently, the Debtor respectfully submits that no additional solicitation is required.

**A.     Scheduling the Confirmation Hearing and Objection Deadlines**

29.     Pursuant to Bankruptcy Code §§ 1128(a) and 105(d)(2)(B)(vi), the Debtor requests that the Court set a hearing to consider confirmation of the Plan.  The Debtor has successfully solicited acceptance of the Plan from Holders of TruPS Claims, the only class of claims entitled to vote on the Plan, as reflected in the *Report on Voting Procedures and the Tabulation of Ballots on the Debtor's Prepackaged Plan of Reorganization Pursuant to Chapter 11 of the Bankruptcy Code* (the "Voting Report"), filed contemporaneously herewith.  As a result, the Debtor requests a single combined hearing, the Confirmation Hearing, to seek the Court's approval of the Disclosure Statement and confirmation of the Plan.  *See* 11 U.S.C. §§ 1128(a) (providing that, after notice, the Court shall hold a hearing on confirmation), 105(d)(2)(B)(vi) (authorizing the Court to combine hearing on approval of the Disclosure Statement with the Confirmation Hearing).

30.     The Debtor respectfully requests that the Court (a) set the Confirmation Hearing at a time convenient for the Court on or after October 22, 2009, and (b) set 5:00 p.m. (prevailing Central Time) on October 14, 2009, seven days prior to the Confirmation Hearing, as the time by which all objections to the Plan must be filed (the "Objection Deadline").

**B.     Approval of Form and Manner of Notice of Confirmation Hearing**

31.     The Debtor requests approval of the notice of the Confirmation Hearing substantially in the form of <u>Exhibit 1</u> annexed to **Exhibit A** attached hereto (the "Confirmation Hearing Notice").[3]

32.     The Debtor proposes to set September 25, 2009 as the record date for purposes of determining when holders of claims and equity interests who are not entitled to vote to accept or reject the Plan will be deemed to receive the Confirmation Hearing Notice.  The Confirmation Hearing Notice will be served upon the Debtor's creditor matrix and all equity interest holders of record, which service will occur as quickly as possible after the entry of the Scheduling Order.  Pursuant to FRBP 2002 and 3017(d), the Confirmation Hearing Notice will:  (a) provide a brief summary of the Plan; (b) disclose the date and time of the Confirmation Hearing; and (c) disclose the date and time constituting the Objection Deadline and the procedures for objecting to the Disclosure Statement and the Plan.

33.     In addition, the Confirmation Hearing Notice will be served upon the Office of the United States Trustee for the Eastern District of Wisconsin (the "U.S. Trustee") and on all Notice Parties identified on the Debtor's Motion to Establish Notice Procedures, <u>Exhibit B</u> (the "Notice Parties").

34.     The Debtor proposes to mail the Confirmation Hearing Notice to its shareholders. The Confirmation Hearing Notice will also be available on the Debtor's website at **www.cibm-reorgdocs.com.**  The Debtor believes that the shareholder mailing and website posting of the Confirmation Hearing Notice will provide sufficient notice of the approval of the

---

[3] The Debtor is not seeking approval of the Disclosure Statement under Bankruptcy Code § 1125(b).  Such approval is not required at the present time because the Disclosure Statement was transmitted prepetition.  Rather, the Debtor will seek approval of the Disclosure Statement, including a finding that the Disclosure Statement contained "adequate information" as that term is used by Bankruptcy Code § 1125, at the Confirmation Hearing.

Disclosure Statement, the Confirmation Hearing, and the Objection Deadline to entities who will not otherwise receive notice by mail as provided herein and through the Solicitation Procedures.

**C.      Procedures for Filing Objections to the Disclosure Statement and Confirmation of The Plan**

35.     The Debtor requests that the Court direct the manner in which objections to confirmation of the Plan (including objections to the Disclosure Statement), if any, must be made.

36.     Pursuant to FRBP 3020(b)(1), objections to confirmation of a plan must be filed and served "within a time fixed by the court." FRBP 3020(b)(1). The Debtor requests that the Court direct that all objections to the Plan be filed by the Objection Deadline as provided herein (unless otherwise agreed by the Debtor in its sole discretion). The Debtor's proposed schedule would provide entities at least 25 days notice of the Objection Deadline.

37.     In addition, the Debtor requests that the Court require that objections to the Disclosure Statement and confirmation of the Plan or proposed modifications to the Plan, if any, must:

>    (a)     be in writing;
>
>    (b)     comply with the FRBP and the Local Rules;
>
>    (c)     state the name and address of the objecting party and the amount and nature of the claim or equity interest beneficially owned by such entity;
>
>    (d)     state with particularity the legal and factual basis for such objections and, if practicable, a proposed modification to the Plan that would resolve such objection; and
>
>    (e)     be filed with the Clerk of the Court with proof of service thereof and served upon (i) counsel to the Debtor; (ii) the U.S. Trustee; (iii) the Notice Parties; and (iv) those parties who have filed a notice of appearance in the Chapter 11 Case so as to be **actually received** by the Objection Deadline.

38. The Debtor believes that the proposed timing for filing and service of objections and proposed modifications, if any, will afford the Court, the Debtor and other parties in interest sufficient time to consider the objections and proposed modifications prior to the Confirmation Hearing.

**D.     Approval of Solicitation Procedures**

39. As described herein, the Debtor distributed the Disclosure Statement and solicited approval of the Plan prior to the commencement of the Chapter 11 Case. FRBP 3017(d) sets forth the materials that must be provided to holders of claims and equity interests for the purpose of soliciting their votes to accept or reject a plan of reorganization. FRBP 3017(e) provides that "the court shall consider the procedures for transmitting the documents and information required by FRBP 3017(d) to beneficial holders of stock, bonds, debentures, notes, and other securities, determine the adequacy of such procedures and enter such orders as the court deems appropriate." As set forth herein, the Solicitation Procedures are in compliance with the FRBP and the Bankruptcy Code.

**Record Date**

40. FRBP 3018(b) provides that the "holders of record of the applicable security" in the Debtor entitled to receive ballots and the related solicitation materials are determined "on the date specified in the solicitation." The Solicitation Package (as defined herein) clearly identified July 15, 2009 as the record date (the "Record Date") for determining which holders of claims and equity interests were entitled to vote to accept or reject the Plan. Accordingly, the Debtor's designation of the Record Date conforms to the appropriate FRBP.

**Approval of Voting Deadline**

41. FRBP 3018(b) provides that prepetition acceptances or rejections of a plan are valid only if the plan was transmitted to substantially all of the holders of claims or equity

11

interests in each solicited class and the time for voting was not unreasonably short. The Debtor commenced the solicitation of votes for approval of the Plan on or about July 16, 2009. The Debtor established 5:00 p.m. (prevailing Central Time) on August 17, 2009 as the deadline to submit ballots to accept or reject the Plan (the "Voting Deadline"). The Ballots (as defined herein) stated in clear and conspicuous language that all Ballots must be properly executed, completed, and delivered to Debtor's Counsel so that they were actually received by Debtor's Counsel no later than the Voting Deadline.

42. The Voting Deadline was subsequently extended twice to September 9 and September 15, 2009, and notices of extension were provided to the same parties that received Solicitation Packages.

43. The Debtor respectfully submits that each holder of a claim entitled to vote to accept or reject the Plan, *i.e.*, holders of Class 3 TruPS Claims, had adequate time to consider the Plan and Disclosure Statement. Not only was the solicitation period sufficient, but the Plan and Disclosure Statement are substantially similar to the Consent Solicitation that had previously been provided to the TruPS Claim Holders. Substantially all of the TruPS Claim Holders that voted either in favor of or against the Consent Solicitation voted in favor of the Plan. Those TruPS Claim Holders that did not vote did not comment on the Restructuring. The entirety of Class 3 Claims are held by only 26 persons, of whom the four largest holders are either institutional (CDO) trustees or fund managers, and the remainder of whom hold their TruPS in brokerage accounts, all of whom had the opportunity to review and provide input on the terms of the Debtor's initial Consent Solicitation either directly, through their advisors or through the CDO Trustees and their advisors. And, to ensure sufficient time to review the Plan and Disclosure Statement, holders of claims in the Voting Class were also entitled to return their

Ballots to Debtor's Counsel by e-mail or facsimile. No Class 3 TruPS Claim Holder has requested additional time to submit its Ballot. Therefore, the Debtor submits that the voting period provided by the Solicitation Procedures was reasonable and sufficient under the facts and circumstances of the Chapter 11 Case and should be approved.

**Approval of Solicitation Package and Transmittal**

44. The Debtor caused a solicitation package (the "Solicitation Package") containing the Disclosure Statement, the Plan (attached as Exhibit A to the Disclosure Statement), the Ballot (as defined herein) and Voting Instructions to be transmitted to holders of claims for the Voting Class on July 16, 2009.

45. FRBP 3107(d) requires the Debtor to transmit a form of ballot, which substantially conforms to Official Form No. 14, only to "creditors and equity security holders entitled to vote on the plan." FRBP 3017(d). The Debtor distributed to creditors one or more ballots in the form of Exhibit 2 annexed to **Exhibit A** attached hereto (collectively, the "Ballots"). The forms for the Ballots are based on Official Form No. 14, but have been modified to address the particular circumstances of the Chapter 11 Case and to include certain additional information that the Debtor believes to be relevant and appropriate for creditors entitled to vote to accept or reject the Plan. *See* FRBP 3017(d).

46. The Solicitation Package was transmitted by the Debtor's Counsel by electronic mail and overnight delivery to the record holders of claims in the Voting Class or further delivery to the TruPS Claim Holders, as well as to the TruPS Claim Holders directly. Such holders were instructed to return their Ballots to the address specified on the Ballot and as described more fully below. All other holders of claims or equity interests were not provided

13

with a Solicitation Package. Such holders of claims or equity interests are unimpaired and conclusively presumed to accept the Plan pursuant to Bankruptcy Code § 1126(f).

### Approval of Procedures for Vote Tabulation

47. The Debtor respectfully requests that the Bankruptcy Court approve the voting and tabulation procedures described herein in accordance with Bankruptcy Code § 1126(c) and FRBP 3018(a).

48. Bankruptcy Code § 1126(c) provides:

> A class of claims has accepted a plan if such plan has been accepted by creditors, other than any entity designated under subsection (e) of this section, that hold at least two-thirds in amount and more than one-half in number of the allowed claims of such class held by creditors, other than any entity designated under subsection (e) of this section, that have accepted or rejected such plan

11 U.S.C. § 1126(c). Further, FRBP 3018(a) provides that the "court after notice and hearing may temporarily allow [a] claim or interest in an amount which the court deems proper for the purpose of accepting or rejecting a plan." FRBP 3018(a).

49. The Debtor requests that the Court approve the vote tabulation methodology to be utilized by the Debtor. The Debtor will not count or consider for any purpose in determining whether the Plan has been accepted or rejected the following Ballots: (a) any Ballot that is received after the Voting Deadline (unless the Debtor grants an extension of the Voting Deadline with respect to the holder who casts the Ballot or otherwise agrees to waive the timeliness requirement); (b) any Ballot that is illegible or contains insufficient information to permit the identification of the Holder; (c) any Ballot cast by a Person that does not hold a Claim or Interest in a Class that is entitled to vote on the Plan; (d) any unsigned Ballot; (e) any Ballot not marked to accept or reject the Plan, or marked both to accept and reject the Plan; and (f) any Ballot submitted by a party not entitled to cast a vote with respect to the Plan. Debtor's Counsel then

14

Case 09-33318-jes    Doc 15    Filed 09/16/09    Page 14 of 20

verified the amount of claims voted by such holders of Class 3 TruPS Claims by submitting a summary report to the broker or record holder to verify that the claim amount identified by each TruPS holder corresponded to obligations actually held by such holder as of the Record Date. In the event such amounts differed and could not be reconciled, the Debtor's Counsel tabulated such claim amounts based on the amounts of claims held by such holder as provided by the record holder.

50.     The foregoing Solicitation Procedures or those substantially similar have been approved in other prepackaged chapter 11 cases. *See, e.g., In re Portola Packaging, Inc.*, Case No. 08-12001 (CSS) (Bankr. D. Del. Aug. 29, 2008); *In re ACG Holdings, Inc.*, Case No. 08-11467 (CSS) (Bankr. D. Del. July 16, 2008); *In re Vertis Holdings, Inc.*, Case No. 08-11460 (CSS) (Bankr. D. Del. July 16, 2008); *In re Hilex Poly Co. LLC*, Case No. 08-10890 (KJC) (Bankr. D. Del. May 7, 2008).[4]

**Non-Transmission of Disclosure Statement To Certain Holders of Claims and Equity Interests**

51.     For the reasons set forth herein, the Debtor requests a waiver of the FRBP requirement that the Debtor mail a copy of the Plan and Disclosure Statement to holders of claims and equity interests presumed to accept or deemed to reject the Plan. *See* FRBP 3017(d) (requiring transmission of a court-approved disclosure statement to, *inter alia*, classes of unimpaired creditors and equity security holders). Because the Debtor solicited acceptances and rejections of the Plan on a prepetition basis, no disclosure statement was "approved" under FRBP 3017(d) and, therefore, FRBP 3017 is not applicable here. However, the Debtor has made

---

[4] *See also In re Remy Worldwide Holdings, Inc.*, Case No. 07-11481 (KJC) (Bankr. D. Del. Oct. 10, 2007); *In re IWO Holdings, Inc.*, Case No. 05-10009 (PJW) (Bankr. D. Del. Jan. 4, 2005); *In re Bally Total Fitness of Greater New York, Inc.*, Case No. 07-12395 (BRL) (Bankr. S.D.N.Y. Aug. 2, 2007); *In re Trico Marine Services, Inc.*, Case No. 04-17985 (SMB) (Bankr. S.D.N.Y. Dec. 22, 2004); *In re McLeodUSA Inc.*, Case No. 05-63230 (JHS) (Bankr. N.D. Ill. Oct. 31, 2005); *In re Orius Corp.*, Case No. 02-45127 (BWB) (Bankr. N.D. Ill. Nov. 18, 2002). Each of these orders are unpublished. Due to their voluminous nature, they have not been attached to the Motion. Proposed counsel to the Debtor will provide copies of any or all of these orders upon reasonable written request.

the Plan and Disclosure Statement available at no cost on their website maintained in the Chapter 11 Case: **www.cibm-reorgdocs.com.**

52. In any event, it would be an unnecessary administrative burden and expense for the Debtor to transmit the Disclosure Statement and Plan to holders of claims and equity interests presumed to accept or deemed to reject the Plan. Accordingly, the Debtor submits that it is not appropriate to require the Debtor to transmit a copy of the Solicitation Package to the holders of claims or equity interests other than those holders of claims and equity interests entitled to vote to accept or reject the Plan.

### The Debtor's Prepetition Solicitation Was Exempt From Registration and Disclosure Requirements Otherwise Applicable Under Nonbankruptcy Law

53. Bankruptcy Code § 1126(b) provides that:

> [A] holder of a claim or interest that has accepted or rejected the plan before the commencement of the case under this title is deemed to have accepted or rejected such plan, as the case may be, if – (1) the solicitation of such acceptance or rejection was in compliance with any applicable nonbankruptcy law, rule, or regulation governing the adequacy of disclosure in connection with such solicitation; or (2) if there is not any such law, rule, or regulation, such acceptance or rejection was solicited after disclosure to such holder of adequate information, as defined in section 1125(a) of this title.

11 U.S.C. § 1126(b). Thus, prepetition solicitation must comply with either generally applicable federal or state securities laws and regulations (including the registration and disclosure requirements thereof) or, if such laws and regulations do not apply, the solicited holders must receive "adequate information" under Bankruptcy Code § 1125. *See* 7 Alan N. Resnick & Henry J. Sommer, eds., COLLIER ON BANKRUPTCY ¶ 1126.03[2][d] (15th rev. ed.).

54. The Debtor respectfully submits that its prepetition solicitation is sheltered under one or more of the exceptions from registration provided by the Securities Act of 1933, 15 U.S.C. §§ 77a-77aa (as amended from time to time, the "Securities Act"), including section

(4)(2) thereof, exempting the Debtor's prepetition solicitation from the disclosure and registration requirements of the Securities Act, state "Blue Sky" laws, or any similar rules, regulations, or statutes. Section 4(2) of the Securities Act in particular, creates an exemption from nonbankruptcy securities law for transactions not involving a "public offering." The Debtor believes its prepetition solicitation did not constitute a public offering because the Debtor reasonably believes that all beneficial holders of claims in the Voting Class are "Accredited Investors" as that term is used under the Securities Act. Therefore, the requirements of Bankruptcy Code § 1126(b)(1) are applicable to the Debtor's prepetition solicitation. As discussed more fully below, the Debtor will seek a determination from the Court at the Confirmation Hearing that all solicited Holders received "adequate information" as defined by Bankruptcy Code § 1125(a) in accordance with Bankruptcy Code § 1126(b)(2).

### E. Approval of the Disclosure Statement at the Confirmation Hearing

55. The Debtor will request that, at the Confirmation Hearing, the Court find that the Disclosure Statement contains adequate information as defined in Bankruptcy Code § 1125.

56. Bankruptcy Code § 1125(a) defines "adequate information" as:

> [I]nformation of a kind, and in sufficient detail, as far as is reasonably practicable in light of the nature and history of the debtor and the condition of the debtor's books and records, including a discussion of the potential material Federal tax consequences of the plan to the debtor, any successor to the debtor, and a hypothetical investor typical of the holders of claims or interests in the case, that would enable such a hypothetical investor of the relevant class to make an informed judgment about the plan … .

11 U.S.C. § 1125(a)(1). The Debtor submits that the Disclosure Statement contains adequate information within the meaning of Bankruptcy Code § 1125(a).

57. The Disclosure Statement is extensive and comprehensive. It contains descriptions and summaries of, among other things, (a) the Plan; (b) certain events preceding the

17

commencement of the Chapter 11 Case; (c) claims asserted against the Debtor's estate; (d) securities to be issued under the Plan; (e) risk factors affecting the Plan; (f) a liquidation analysis setting forth the estimated return that holders of claims and equity interests would receive in a hypothetical chapter 7 case; (g) financial information and valuations that would be relevant to creditor's determinations of whether to accept or reject the Plan; and (h) securities law and federal tax law consequences of the Plan. Accordingly, the Debtor submits that the Disclosure Statement contains adequate information within the meaning of Bankruptcy Code §1125(a) and should be approved.

## **Waiver of Bankruptcy Rule 6004(a) and 6004(b)**

58. To implement the foregoing successfully, the Debtor seeks a waiver of the notice requirements under FRBP 6004(a) and the ten-day stay of an order authorizing the use, sale, or lease of property under FRBP 6004(h).

## **Notice**

59. The Debtor will serve notice of this Motion on the Noticed Parties identified on the Debtor's Motion to Establish Notice Procedures, Exhibit B.

## **No Prior Request**

60. No prior request for the relief sought herein has been made to this or any other court.

WHEREFORE, the Debtor respectfully requests entry of an order, substantially in the form attached hereto as **Exhibit A**: (a) scheduling the Objection Deadline and the Confirmation Hearing; (b) approving the form and manner of notice of the Confirmation Hearing; (c) establishing procedures for objections to the Plan and Disclosure Statement; (d) approving the Solicitation Procedures used in connection with the Debtor's solicitation of the Plan prior to

18

the Petition Date; and (e) granting related relief granting such other and further relief as the Court may deem just and proper.

Dated this 15th day of September, 2009.

                    **GODFREY & KAHN, S.C.**

                By:      /s/ *Carla O. Andres*
                      Timothy F. Nixon (WI Bar No. 1013753)
                      Carla O. Andres (WI Bar No. 1020997)

                      *Proposed Attorneys for the Debtor*

Timothy F. Nixon
Carla O. Andres
GODFREY & KAHN, S.C.
780 North Water Street
Milwaukee, Wisconsin 53202
Tel: (414) 273-3500
Fax: (414) 273-5198
E-mail: tnixon@gklaw.com
        candres@gklaw.com

3959247_1